Thank you, Your Honor. Good morning. May it please the court, counsel, my name is Gail Johnson and I represent Aaron Keith in this criminal direct appeal. Excuse me, can you turn up the music? I can also try and project more, Your Honor, if that helps. Is that better? Does that suffice? I'm going to focus my arguments today on Mr. Keith's claim under the Speedy Trial Act, the statutory claim, and particularly the lack of adequate findings, sometimes any findings, or the reliance on a prohibited factor in granting multiple ends of justice continuances. Are you also going to address their two-clock theory? Yes, Your Honor, and I could start there if the court would like. Oh, sure. Yeah, I'm interested in what you make of their argument that the clock was reset. Of course, Your Honor, and obviously that has an impact on the calculations. So the government's argument, you know, our position is that it took 874 days between when Mr. Keith was indicted and when he was brought to trial on May 11th, 2010. But that's really not what we measure, is it? Don't we have to take it in segments? Well, each continuance is addressed on its own, for sure, but I think overall the amount of time matters, and I'm just trying to set the stage, but of course, Your Honor, is correct. We look at each continuance. Now, what was he doing in the meantime? Was he out playing golf? No, Your Honor. Mr. Keith was originally in state custody, and then on January 13th, 2020, his state sentence was discharged, and from that moment forward he was continuously in federal custody. He was not playing golf. He was subject to pre-trial detention. And so back to Judge Matheson's question about the two-clock theory of the government. So the government's theory is, no, this isn't really that long, because the clock reset in November 2020 when jury selection was begun, but no trial occurred. That's wrong for several reasons. The jury was never sworn. Jeopardy never attached, and no mistrial was declared. So this is not the type of scenario that might be contemplated by the statute, for example, where a trial actually begins and a mistrial then is declared. That's not what happened here. Are we just on our own here? There aren't any cases that are akin to this. Oh, there is, Your Honor, and I cited the case of United States v. Staten, S-T-A-Y-T-O-N, from the Second Circuit. So the government relies on Arnold, which is a Tenth Circuit case, but that is inapposite, because it's not about this question of when voir dire begins, but no trial actually occurs for several months, in this case, six months. Arnold is about whether a speedy trial act motion to dismiss is timely, and so in passing there, the court says it needs to be filed before the start of voir dire. So when are we talking about the period of time that you're questioning the speedy trial act? Well, we're questioning... I see on July 9th, he was offered a trial, wasn't he, and turned it down. That is correct, Your Honor. And so then we start over again, don't we? I don't believe so. Under this court's decisions, under the U.S. Supreme Court's decision in Zedner and under Toombs, and I think other cases we've cited, basically, because the public itself also has an interest in the purposes of the speedy trial act, of a trial happening promptly, the courts have been clear that defendants' purported waiver or other things that may be in violation of the speedy trial act claim under the statute. And if I could go back to the Staten case from the Second Circuit, that is on point. In Staten, voir dire was begun, the jury wasn't sworn, and then there was months of delay until the start of trial. And the Second Circuit there said no. They rejected the exact type of argument the government makes here. You don't restart the clock then. That would totally violate all the purposes that the speedy trial act is meant to further. So in November, when the COVID issue arose with the juror and the court trying to figure out what to do, am I correct that it invited the parties to address the issue? Were briefs filed and positions taken? I guess what I'm getting at is, did the defendant take a position on whether the jury should be dismissed or not? Yes, Your Honor. I believe what happened is the government filed a motion to excuse the jury, and in the government's motion, it noted that both defendants objected, including Mr. Keith. And that was because of the COVID. Well, COVID was certainly happening, and the court had tried to select a jury, and then there's a period of time there where there are no ends of justice findings. Between, I believe, November 3rd and November 30th. Well, November 6th, one of the jurors tested positive for COVID. That's correct, Your Honor. But there are inadequate findings, for example, why the other jurors couldn't have been brought back after a quarantine period and started that trial in November, or alternatively, why a new jury panel couldn't have been brought in and started trial. And there was no, when the jury was dismissed, there was no mistrial declared? Well, the court had not been sworn, I don't believe, right? Yes, both of you are correct. Because the jury had never been sworn, trial had not begun, no mistrial was declared. But that is a difference between this case and Staten, which you're citing. And Staten wasn't the same jury ultimately sworn. It just took a long time before that happened. Yes, but I think that's a distinction without a difference in terms of getting back to why the government's two-clock theory is. I don't know if it is or not. And that's why I'm looking to see if there's a case exactly like this. I don't think there is. I'm not aware of one more exactly like this, Your Honor. I think Staten is the best one I found. But I think the principles of Staten definitely apply, which again is, you know, if the court were to bless this two-clock theory, you know, courts and prosecutors could get around the strict requirements, the strict procedural requirements of the Speedy Trial Act by, you know, starting some jury selection and then postponing for an unlimited number of months. If indeed we bought the two-clock theory, would you lose? I don't believe so. Because even so, the continuances after that are problematic. I direct the court's attention to the fifth continuance, which is from November 30th, 2020 to January 12th, 2021. There's 43 days there. Again, my comments before apply. There's no indication why the court couldn't have decided on November 23rd when it's issued its order. Let's bring in another jury panel on November 25th or the 26th or the 27th. Let's get this case tried in a speedy way. There's no findings. And then on the sixth continuance, which is for 119 days from January 12th, 2021 to the ultimate trial date of May 11th, 2021. Again, 119-day continuance. That's the one where the court expressly relied on a factor that is statutorily prohibited. Have you seen the case United States v. Niveros from last month? I have, Your Honor. And it says that you can't seek speedy trial time after your motion is filed. In other words, you can't say, if this trial doesn't occur until then, why all that time is excludable? You can only look backwards from your motion to dismiss. So how are you able to look forward as you just posited there to the trial date in view of Niveros? Yes, Your Honor. Because the motion to dismiss was filed after the court had granted the continuance to May 11th, 2021. So that delay had already been granted. But the delay hasn't occurred. And the way I read Niveros, at least, and maybe you're right and I'll be wrong. The way that I read Niveros is you can't do that. You can't say, we're filing our motion to dismiss because you have set a trial months in advance and all of that time is unexcludable. You can only look backwards from your motion to dismiss. In other words, you have to file another motion to dismiss before the May trial. Your Honor, I understand there is language in Niveros that supports the court, that supports the broad reading you're suggesting. I do think that this posture distinguishes that, though, and that that broad reading would have tremendously negative policy consideration. I mean, I think you would end up with a situation where a defendant would essentially need to refile their motion to dismiss every single day after. No, you wouldn't. You could just file it the day before the May trial and you're covered. And I think if you do that, then you're accused of laying in the weeds and not giving the court an opportunity to grant you a state trial by waiting too long. And under the Sixth Amendment context, there's case law in United States v. Batten from this court that says quite the opposite, says you get punished if you file it too late. So I think from a policy perspective, the court needs to be careful about reading that Niveros principle too broadly and applying in this case. Where again, I think the distinction here is meaningful. Everyone knew by the time... Apart from Niveros, though, doesn't the Speedy Trial Act itself provide that you have to have the violation the 70 days has to elapse before you file the motion? Your Honor, I don't remember that provision in the statute. I do know the statute requires that you file it before trial. That's the one I remember. Before trial. Right, yes. And again, we take issue with the several continuances granted before that date as well as after. Well, what significance is it that Mr. Keith did not object to the terms of the scheduling order in the period, I guess it'd be around the 21st or thereabouts of 21? Your Honor, I think in the constitutional claim, that would weigh against him. Again, in the statutory context, I don't believe that obviates the need for this court to carefully scrutinize whether the district court and the government fulfilled their obligation to bring him to trial in a speedy manner, which is also in the interest of the public. So you have cases from this court. Well, I guess I'm having problems figuring out how to sort out the COVID issues. And it seems you're saying, well, we could ignore the general orders that have postponed all trials because if they wanted to, they could have snuck in through the basement maybe and tried them in a timely fashion. Is that what you're saying, that you can ignore the general orders that shut down all the courts? No, Your Honor, I'm saying two things. Number one, the statute requires the findings to be entered in the record in the case. Well, but there's no specific need for extensive findings. I'm simply saying where there was no finding referencing any general order, I don't think that those are fair game to the government to rely on. And second, again, there were options. Again, in November, the court had options. And even earlier, again, there was a clearly erroneous finding that Mr. Keyes wasn't in custody. There were inadequate findings for those earlier continuances. I see I've got a couple minutes left. So if I may, I would reserve my remaining limited time for rebuttal. Thank you. Thank you, counsel. May it please the court, Stephen Craig on behalf of the United States. The district court properly denied Mr. Keyes' motion to dismiss based on the speedy trial issues. The court seemed interested first with the government's two-clock theory it's been referred to. This theory directly comes from 18 U.S.C. Section 3161E, which provides that a new 70-day clock starts not only when a mistrial is declared, but also, quote, following an order of such judge for a new trial. This raises the question, what constitutes a trial for purposes of the Speedy Trial Act? Counsel, could I just clarify? This is not what the district court relied upon in denying the Speedy Trial Act motion, correct? Correct. So you're presenting this as an alternative ground to affirm. Correct. And the reason I'm presenting it first is because in determining what constitutes the thing that we're looking at, looking for, and also to address things like waiver, it's necessary to determine whether there was one overarching 70-day clock or whether there were two individual 70-day clocks. If you would prefer, I'm happy to go straight to the district court. No, no. I raise the two-clock theory and I welcome your addressing it. And you did mention you cited a provision in the statute. Has any court adopted this theory? So I will apologize for not including any case in the brief. Doing further research, I found one. So if you want, I can tell you and I can file a 28-day letter with regard to it. The closest case that I was able to find was United States v. Kington, which is 875 Federal 2nd, 1091. It's out of the Fifth Circuit. It's a 1989 case. Basically what happened there, and it's fairly similar to this case in terms of a jury was selected but not sworn. In the Fifth Circuit case, what happened there was, I believe it was two days after the jury was selected but not sworn, the district court granted a motion to suppress. It then declared a mistrial, which admittedly is somewhat different than this case. And then after an appeal and the case came back, a new 70-day period started. The defendants appealed, arguing that there should only be one 70-day period and that the Fifth Circuit explained that when the mistrial was declared, that resets the clock. Like this case, the jury wasn't sworn. No evidence had been presented. Jeopardy had not attached. The only difference between this case and Kington is that the district court in Kington apparently uttered the magic words, mistrial. Now, if Congress had only provided for a resetting of the clock upon a declaration of mistrial, I think Mr. Hughes's argument would have a little more, at least like to stand on. But Congress didn't limit this to just a district court's declaring a mistrial. It included the declaring of mistrial. It also provided for an order for the clock to be reset following an order for a new trial. Well, does it matter that the defendant opposed dismissal of the jury? I mean, I think in most of these cases where the clock is reset, it's because a mistrial has been declared and the defendant wants a mistrial to be declared. But here, the defendant wanted the jury and the trial to go forward. So how does that factor into whether the clock should be reset? Well, Your Honor, I would submit this is the very reason why the reset provision is there. The irony of Mr. Keith's position in the district court about wanting to keep the jury and having them hear the case later on, and it would have to be later on when the court was reopened because after this trial, the court was then, our jury trials were then suspended in December, January, February, and March. Mr. Keith essentially was asking for the exact situation in Staten to happen, to keep the jury for a long period of time, and then to have the jury hear the case, which as Mr. Keith suggests, might violate the spirit of the Speedy Trial Act. What happened here was we knew the jury likely would have to be held over for a long period of time, first the 14 days for quarantine, and then we were running into, I believe, Thanksgiving or something along those lines. And as the district court found, the earliest the jury could come back would be November 30th. Well, that doesn't seem very long. The trial was set for November 3rd. Well, this court has explained that the case escapes me, but it is my grief, and it was also in the motion to select a new jury, that holding over a jury for even three weeks can create a significant amount of prejudice. Oh, well, that's the reason for dismissal of the jury. But when it comes to the Speedy Trial Act delay, we're talking about just the practical steps that need to be taken to restart the trial, and it's less than 30 days. Well, your Honor,  is you have to first summon a new... If you excuse the jury, you have to summon a new veneer. You then have to go through the jury selection process. It's not like the clerk can... Counsel, I don't want to belabor the point, but I thought what you were saying is that November 30th would be the point at which you'd bring back the jury because the quarantine period had ended, so you wouldn't be picking a new jury. Well, that was one of the possibilities laid out by the district court, and that was one of the options the district court had. At the time the government filed this motion to excuse the first jury and restart jury selection, the thought would be if we select a new jury, the new jury would be selected, I believe, on December 1st, so we're talking about the difference of a day. The difficulty is, as the district court noted in the order granting the motion to excuse the jury, in the interim between the government filing the motion and the defendants filing the response and the few days that had elapsed with the district court filing its order, a new general order had been issued suspending jury trials in December, and so the jury was not going to be seated on November 30th because COVID conditions had substantially worsened in that period of time. And that's, I believe, general order 20-26, which is referenced multiple times in that order. But even if we move past the 70 days, we still have a couple of issues that Mr. Keith points out, but which don't ultimately end up in warranting relief. The first major issue, I think, that he points out is the alleged lack of discussion or reasoning in the orders granting the continuances. As far as the general orders are concerned, the general orders were not merely referenced once or twice in passing. In fact, pages 494 to 497 of Volume 1 of the Record on Appeal identifies general orders 20-8, 20-10, 20-13, 20-26, 20-27, 21-1, and 21-3, all of which were times that the jury trials were suspended in the Western District of Oklahoma. It then identified general orders 20-19, 20-20, 20-21, and 20-22 as instances where limited jury trials were being had. Generally, these were single defendant, single count cases where there weren't the complexities of multi-defendant, vast conspiracies. And limited jury trials were happening because essentially the Western District of Oklahoma was attempting to move the cases along both as expeditiously as possible, but keeping in mind the concerns of COVID for the public, for the defendants, for court personnel, for the potential jurors, and for the witnesses. And so jury trials were slowly spinning up from August to November of 2020, including all of the jury trials that had been set and had been continued from March, where I believe there was at least, and this admittedly is on the record, but one was mistried, and then all of the trials that had been set up to that date that would have preceded these in time. And so we eventually get to the November 20th. Excuse me. So the district court didn't just merely reference one or two. It specifically went through each of these general orders, citing them as one of the reasons for those continuances. And as the Supreme Court explained in pages 506 and 507 of Zedner, under the Speedy Trial Act, the district court is free to put its reasoning or the reasoning for the continuances into the record up until the point of ruling upon the motion to dismiss. And that's what the district court did here. The reasoning that was provided by the chief judge in the general orders, which were issued contemporaneously with the continuances being granted, were accepted as reasons by the district court for excluding time. Are the periods that aren't referenced in the motion to dismiss, which is to say the first delay and the second delay, are those out? We don't even have to consider those because you have to make the... You have to include those periods in your motion to dismiss or you lose them. I'm talking about U.S. v. Laughlin. I think as far as... It clearly would be the case to the extent the court adopts the 70-day... Excuse me, the 270-day clock proposal put forth by the government. As far as if this court were to consider the entirety of November 2018 to May of 2021, I'm not 100% sure. I'll admit I'm not familiar with Laughlin,  so I can't speak directly. I apologize. Go ahead. Could I just ask you about the last continuance where the trial was continued to May 11, 2021. Didn't the court in part rely on avoidance of double booking its docket to set the May trial date? And why should that count against ends of justice? Well, I think there are two responses to that. First, I don't think the court was concerned about double booking its docket. I think the court was concerned about the complexities of this case. Wasn't it concerned about docket congestion? To the extent there was some reference to that, it was concerned about trials starting up as was observed from the August to November period where it would take trials at a time to get started. Wind up and going. I think the critical component here is in 3161 H7C, which is what Mr. Keith relies upon. It's not just the congestion of the court. It's general congestion of the court. And I would submit that the key word general, or the word general is the key word here. This is not congestion of the court just because we have a lot of cases going on. This was congestion of the court because the court had been closed due to a global pandemic that had affected tens of thousands, hundreds of thousands of people in the Western District of Oklahoma. It was having to start up in the midst of COVID protocols still being in place. And it was taking every... It was trying to balance, essentially, the rights of the defendant and the public must be to trial against the protection of the public, the defendant's court personnel, witnesses, and the jury. Does Niveras take care of that to where we don't even have to look at that if you have had a chance to look at Niveras? Yeah, I believe so. I believe Niveras, and I read through it once or twice, dealt with a motion filed prior to the expiration of the Speedy Trial Clause, where there had been a discussion about pushing it out past the expiration of the Speedy Trial Clause. And this court said that there was a waiver. But even without Niveras, this court said the exact same thing in Mays, where it said the period of delay after the filing of a motion, quote, is irrelevant to the Speedy Trial inquiry. And this is not the only court to have said that. The Sixth Circuit in Meshour, the First Circuit in Connor, and the Ninth Circuit in Worsing have also said that. And one reason I think that this is important is that we went into something like this case where additional information comes out in the interim. For example, after the motion to dismiss was filed, another general order was issued with regards to February of 2021 suspending jury trials, and at least March of 2021 suspending jury trials with additional findings there. And then an order setting limited jury trials in— I see my time has expired. Let me finish. Why don't you finish your thought? There was the general order with regard to April of 2021 setting limited jury trials. Because the order was after or before that date, those could not have been incorporated into the record directly absent as to respond to the order of the court. Thank you, counsel. Thank you. We have some rebuttal time. Thank you, Your Honor. With respect to the court congestion concern, this is at volume one, page 455. The trial court's order said, quote, it is likely that conducting this trial will prevent other trials from simultaneously proceeding, end quote. That's the statutory prohibited factor that is a speedy trial act violation. In terms of the concerns about perhaps the vigor or the frequency which Mr. Keith objected, I would direct the courts to both Toombs and Saltzman. In the Toombs case— I'm sorry, to what? Toombs, this court's decision in the United States versus Toombs, T-O-O-M-B-S, kind of one of the seminal speedy trial act cases in this circuit. And in that case where there was a reversal for speedy trial act violations for inadequate findings under the statute, the defendant there had requested seven of the nine continuances. Similarly, if the court refers to my reply brief, page 29, there's some quotes there from the Saltzman case, also from this circuit, 94, F second at 1091. Provisions of the speedy trial act cannot be waived by a defendant acting unilaterally because it would compromise the public interest in speedy justice. The fact that the defendant has requested the continuance or consents to it is not in itself sufficient to toll the operation of the time limits, end quote. Again, just if I could briefly address the Navarres case, I do think another distinguishing feature is that in that case at the time the objection was lodged, there was—the defendant there conceded that there had been adequate tolling up until that moment. Mr. Keith did not so concede in this case. And your honors, of course, I've not had a chance to reference the— review the Fifth Circuit case that counsel refers to today. I will potentially file a response to the 28-J letter. If there are no further questions, we'd ask the court to reverse and ask the—with directions to the district court to dismiss with prejudice. Thank you. Thank you, counsel. The case will be submitted and counsel are excused.